UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUZANNE CRUISE CREATIVE SERVICES, INC.,
a Kansas corporation, and LAURIE COOK, an
individual,

                        Plaintiffs,        CIVIL ACTION

                                       Index No.: 10-cv-4293 (PKC)

                                       **DECLARATION IN OPPOSITION**
          -v-                       **TO DISMISS THE AMENDED**
                                       **COMPLAINT AGAINST LENCSAK**

BARRINGTON STUDIOS LTD, a New Hampshire
corporation, ANTHONY SPERANDEO, an individual,
GEORGE LENCSAK, an individual, SHOPKO STORES
OPERATING CO., LLC, a Delaware Limited Liability
Company, FRED MEYER STORES, INC., a Delaware
corporation, WAL-MART STORES, INC., a Delaware
corporation, CVS CAREMARK CORPORATION, a
Delaware corporation, DOLLAR GENERAL
CORPORATION, a Tennessee corporation, DOLLAR
TREE, INC., a Virginia corporation, BIG LOTS, INC.,
a Delaware corporation, and Does 1-10,

                          Defendants.
-------------------------------------------------------------X

      I, TEDD S. LEVINE, an attorney duly admitted to practice before the United States District Court, Southern District of New York, under penalty of perjury, hereby declare as follows:

      1.     I am a member of the law firm of The Law Offices of Tedd S. Levine LLC, attorneys for Plaintiffs Suzanne Cruise Creative Services, Inc. ("Cruise") and Laurie Cook ("Cook") (hereinafter jointly referred to as "Plaintiffs"), and fully familiar with the facts and circumstances stated herein. I am making this declaration in opposition to dismiss the Amended Complaint against defendant Lencsak.

2.  Annexed hereto as Exhibit A are true and correct copies of an Affidavit of George Lencsak and a Petition for a Preliminary and Permanent Injunction filed in the matter of Barrington Studios Limited, USA v. Anthony Sperandeo, Superior Court of New Hampshire, Docket No. 10-E-0170.

3.  Annexed hereto as Exhibit B are true and correct copies of pages from the transcript from George Lencsak's deposition taken November 30, 2010.

4.  Annexed hereto as Exhibit C is a true and correct copy of a registered letter dated January 29, 2010 sent by George Lencsak and Kristine Burleigh to Anthony Sperandeo.

5.  Annexed hereto as Exhibit D are true and correct copies of shipping documents relating to products that use artwork at issue in this action showing "Port of Discharge" being New York, NY.

Dated: Garden City, New York
       May 12, 2011

_____
TEDD S. LEVINE

# Exhibit A

State of New Hampshire

Hillsborough County
Southern District

Superior Court
Docket No. 10-E-0170

Barrington Studios Limited, USA

v.

Anthony Sperandeo

### Affidavit of George Lencsak

1. I am the president and CEO of Barrington Studios Limited, USA and I make this affidavit on my own personal knowledge.

2. Kristene Burleigh fully supported the Company's decision to terminate the employment of Anthony Sperandeo based on her and my independent determinations that his continued employment would be irreconcilably disruptive to the Company.

3. In 2008 and 2009, Barrington paid more than $1,000,000 in late charges and additional shipping charges caused by Sperandeo's failures to perform his job.

4. Burleigh confirmed her agreement with this decision in two separate emails. On January 28, 2010, she emailed the Company's banking contact and informed him that Sperandeo's employment would be terminated effective January 29, 2010. That email is attached hereto as Exhibit A.

5. On January 30, 2010, Burleigh and Sperandeo engaged in an email exchange, which is attached hereto as Exhibit B.

{W1850865.1}

6. The June 2, 2010 letter from Sperandeo's counsel is attached hereto as Exhibit C.

Dated: June 28, 2010                    /s/ George Lencsak
                                        George Lencsak

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

Subscribed and sworn to, before me,

June 28, 2010                           /s/ Sandra L. Logan
                                        Notary Public

                                        Sandra L. Logan
                                        Notary Public – New Hampshire
                                        My Commission Expires December 27, 2011

{W1850865.1}

Case 1:10-cv-04293-DLC   Document 65   Filed 05/12/11   Page 6 of 20
Case 1:10-cv-04293-DLC   Document 22-4   Filed 11/03/10   Page 4 of 42

Page 1 of 1

**Exhibit B**

## Kristene Burleigh

| | | | |
|---|---|---|---|
| **From:** | baringnst@aol.com [baringnst@aol.com] | **Sent:** | Sat 1/30/2010 12:39 AM |
| **To:** | Kristene Burleigh | | |
| **Cc:** | | | |
| **Subject:** | Re: Classy | | |
| **Attachments:** | | | |

I'm not threatening you, I wouldn't consider that a threat. I really did want to end my career with Barrington. and the Internet thing is something that I had thought of doing if you guys were to do something like what you did. I never acted on it. I didn't do anything else shame on me, for thinking I could actually try and get back into every ones good graces by working hard and contributing.


-----Original Message-----
From: Kristene Burleigh <kburleigh@barringtonstudiosltd.com>
To: baringnst@aol.com
Sent: Sat, Jan 30, 2010 4:18 pm
Subject: Re: Classy

Don't threaten me little man
Good luck with your internet company you are starting

**From:** baringnst@aol.com
**To:** georgelencsak@tds.net ; Kristene Burleigh
**Sent:** Sat Jan 30 00:11:45 2010
**Subject:** Classy
That was a real class act, shutting down my e-mail address and telephones in Hong Kong, so in case of an emergency no one could reach me. That really shows what you are both made of. Doing that to a partner and the founder of the company. That's a pretty crappy way of treating someone. It will come back to haunt you, every time you don't get the order that you thought you should get.

State of New Hampshire

Hillsborough County  
Southern District

Superior Court  
Docket No. _____

Barrington Studios Limited, USA

v.

Anthony Sperandeo

### Petition for Preliminary and Permanent Injunctive Relief

Now comes Barrington Studios Limited, USA, by and through its attorneys Pierce Atwood LLP, and in support of this Petition for Preliminary and Permanent Injunctive Relief states as follows:

1. Barrington Studio Limited, USA ("Barrington" or the "Company") is an Illinois corporation with its principal place of business at 54 Technology Way, Nashua, New Hampshire, 03060.

2. Anthony Sperandeo is a resident of Englewood, Florida with an address of 6300 Manasota Key Road, Englewood, Florida, 34223.

3. Barrington is in the business of producing and selling designer gift bags and stationery products.

4. Barrington was founded by Sperandeo in 1999.

5. Requiring an infusion of cash, on January 2, 2005 Sperandeo executed a Shareholder Agreement with George Lencsak and Kristine Burleigh under which Sperandeo, Lencsak and Burleigh each were granted 1,000 shares in the company in exchange for a $200,000 capital contribution from each shareholder.

{P0319023.1}

6.   As of January 1, 2005, Sperandeo, Lencsak and Burleigh all signed identical employment agreements with the Company.

7.   The Shareholder Agreement and employment agreements were drafted by Sperandeo's counsel.

8.   Lencsak, as President of Barrington, signed each of the employment agreements on behalf of the Company.

9.   Sperandeo, Lencsak and Burleigh comprised the three members of the Company's Board of Directors.

10.  Sperandeo's Employment Agreement provided that his employment could be terminated by the Company if "two of the members of the board of Directors determine that they can no longer work with Executive and Executive's actions are irreconcilably disruptive to the business."

11.  Similarly, Section 2.02 of the Shareholders Agreement states that if "two of the three Shareholders determine. . .that there is an irreconcilable dispute with the third Shareholder and the three of them can no longer work together" the Company shall then purchase the ownership interest of the third shareholder for the "Agreed Buy-out Price."

12.  Under Section 1.01(a) of the Shareholders Agreement, the Agreed Buy-out Price for Sperandeo after January 2, 2008 is $200,000 plus one-third of the AAA Account, which is defined as net profit of the Company that has not been distributed, minus any amount previously paid to Sperandeo pursuant to paragraph 9.01.

13.  Paragraph 9.01 states that "as soon as there is sufficient cash flow" the Company shall distribute $200,000 to Sperandeo "as a return of a portion of his Capital Contribution."

14.  This amount was not paid as the Company did not have sufficient cash flow. Indeed, Sperandeo's portion of the AAA Account is currently negative by $126,456.64.

15.  On January 29, 2010, the Company informed Sperandeo, first by telephone and then by letter, that it was terminating his employment because both Lencsak and Burleigh had determined that they could no longer work with him and that his actions had become "irreconcilably disruptive to the business of the Company." January 29, 2010 letter, at 2 (attached hereto as Exhibit A).

16.  In the January 29, 2010 Letter, the Company extensively detailed the grounds for the two directors' determination. More specifically, it noted Sperandeo's insistence in 2005 to relinquish all day-to-day corporate and administrative responsibilities, which fell upon Lencsak and Burleigh.

17.  The Letter further noted that Sperandeo had agreed to visit manufacturing facilities in Asia but that he made poor production decisions during those visits and at some point stopped making any visits at all unless accompanied by Lencsak and Burleigh.

18.  Given Sperandeo's failures in regard to production, the Company asked Sperandeo in 2008 to contribute to sales and marketing. Sperandeo made no appreciable efforts in this regard, even failing frequently to meet quoting timelines for customers that he had been assigned.

19.  In 2008 and 2009, Barrington paid more than $600,000 in late charges and additional shipping charges caused by Sperandeo's failures to perform his job.

20.     Sperandeo also failed to report for work for extended periods of time in 2008 and 2009 in breach of the requirement in his employment agreement that he devote all of his "business time" to performing services for the Company.

21.     Sperandeo's general refusal to cooperate was evident during a trip to Asia in January, 2010, when Sperandeo refused to speak with Lencsak and Burleigh or the Company's business contacts, causing considerable disruption to sales efforts.

22.     During his employment, Sperandeo was paid a salary of $10,000 per month plus benefits.

23.     For some time, the Company believed that Sperandeo was working on a plan to compete with the Company in violation of paragraph 8 of his Employment Agreement, which states that he "not engage in any other business activity for gain." This belief was based on his extended absences from work and his tendency to take phone calls outside the office. This belief was subsequently confirmed by the discovery of an email sent by Sperandeo on January 16, 2010, in which he discussed setting up a competing business with another party.

24.     For all of these reasons, Lencsak and Burleigh determined that they could no longer work with Sperandeo and that there was an irreconcilable dispute between them and Sperandeo.

25.     Having made that determination, the Company thereafter exercised its rights and terminated the employment of Sperandeo by the January 29, 2010 conversation and follow-up letter. Although that letter was signed by both Lencsak and Burleigh, Lencsak as president of the Company was authorized to take this action because two board members had made the determination described in paragraph 24 of this Petition.

26.    After receipt of that letter, Sperandeo and Burleigh engaged in adversarial email exchanges.

27.    Pursuant to paragraph 1.01(a) of the Shareholders Agreement, Barrington calculated the purchase price for Sperandeo's shares as $73,543.36, which was the difference between $200,000 and the negative $126,456.64, which was one-third of the AAA Account or net profit of the Company, as shown on its most recent financial statements.

28.    In correspondence with Sperandeo and communications with his attorney, Sperandeo refused the Company's demand that he agree to convey his shares back to the Company in exchange for a payment of $73,543.36 in accordance with the terms of the Shareholder Agreement.

29.    Sperandeo is in possession of a Lexus convertible and a Chevrolet conversion van, which are both owned by the Company and valued at $66,432.06.

30.    Sperandeo has refused the Company's demand that he either return the vehicles or agree to accept the difference between the value of the vehicles and the $73,543.36 owed by the Company for the purchase of Sperandeo's shares.

31.    On or about February 9, 2010, Burleigh died from natural causes.

32.    Sperandeo has since falsely claimed that Burleigh never signed the January 29, 2010 letter.

33.    While neither Barrington nor Lencsak have any reason to believe that Burleigh did not sign the January 29, 2010 Letter or that the initials above her name were not written by Burleigh, her signature was immaterial because she had already made the determination that she could not work with Sperandeo and that an irreconcilable dispute

{P0319023.1}                                    5

existed between them. Once Burleigh communicated that determination to Lencsak, Lencsak was authorized to terminate Sperandeo's employment.

## Count I -- **Breach of Contract**

34.  Barrington re-alleges and incorporates paragraphs 1 through 33 as if fully stated herein.

35.  Sperandeo's refusal to convey his shares in the Company for the agreed buy-out price constitutes a breach of the Shareholder Agreement.

36.  Sperandeo's refusal to return the vehicles constitutes an additional breach of the Shareholder Agreement.

37.  Barrington is being irreparably harmed by the foregoing breaches of contract.

38.  Barrington is being monetarily harmed by the foregoing breaches of contract.

## Count II -- **Conversion**

39.  Barrington re-alleges and incorporates paragraphs 1 through 38 as if fully stated herein.

40.  Sperandeo's refusal to returns the vehicles constitutes conversion.

41.  Barrington is being monetarily harmed by Sperandeo's conversion.

Wherefore, before and after a final hearing on the merits, Barrington respectfully requests that this Court issue the following preliminary and permanent injunctive relief:

A.  Require Sperandeo to return the Lexus convertible and the Chevrolet conversion van to Barrington at its offices at 54 Technology Way in Nashua, New Hampshire.

B.   Recognize Barrington as the proper owner of Sperandeo's shares and order Sperandeo to execute documents conveying those shares to Barrington against payment of the purchase price set forth herein.

After a final hearing on the merits, Barrington respectfully requests that this Court award:

A.   Damages to Barrington on its claims for breach of contract and conversion;

B.   Barrington its reasonable attorneys' fees and costs; and

C.   Barrington any other relief this Court deems appropriate.

Respectfully submitted,

Barrington Studios Limited, USA

By its attorneys,

David A. Anderson
N.H. Bar No. 12560
Pierce Atwood LLP
Pease International Tradeport
One New Hampshire Avenue
Suite 350
Portsmouth, NH 03801
(603) 433-6300

Date: May 21, 2010

# Exhibit B

**RESTRICTED DOCUMENT**

# Exhibit C



54 Technology Way                                              PH: 603-882-4700
Nashua, NH 03060                                               Fax: 603-882-4744

January 29, 2010

**BY REGISTERED MAIL**

Mr. Anthony Sperandeo
6300 Manasota Key Rd.
Englewood, FL 34223

Dear Tony:

Confirming our conversation earlier today, the purpose of this letter is to inform you that your employment with Barrington Studios Limited, USA (the "Company") is hereby terminated.

When we acquired ownership in the business five years ago, we did so with the expectation that, as owners with equal shares, all three of us would shoulder an equal share of the burdens and responsibilities of running and promoting the business of the Company.

Unfortunately, for the last four years, you have not lived up to your end of that bargain. <u>Within a year of our joining you as owners, we were essentially forced to assume your corporate and administrative duties on a day-to-day basis because you no longer wished to perform them.</u> However, in doing so, as you know, we did not agree to relieve you of all responsibilities or from an active role in the Company – indeed, you agreed to continue to participate in decision-making regarding the business and to support production efforts, including visiting and inspecting factories and scheduling production. Not only did you make very poor production decisions causing substantial losses to the Company, but we discovered that, in your numerous trips to Asia in which you were supposed to be visiting and inspecting our factories there, you never, in fact, visited those factories unless one of us was also present on the trip. Indeed, during our most recent trip to Asia this month, you would not even speak with us or our business contacts during meetings, which was extremely awkward and disruptive to our efforts. You have also continuously failed to communicate with us accurately regarding production information. These failures have been severely and continuously disruptive to the business of the Company.

When it became clear that you had failed to perform your production responsibilities, in 2008 you were asked to contribute to sales and marketing. To date, you have made no contributions to speak of to our sales and marketing efforts and have failed to communicate with us accurately regarding sales information, while also failing to meet timelines in the quoting process for customers for which you had assumed responsibility.

In addition to these failures, you have failed to keep records of your activities and expenses, failed to follow the Company's expense policies and improperly used Company funds to pay personal expenses. To top it off, you have frequently disappeared from the Company for weeks at a time with no communication. Not only do these absences represent a failure to devote your full business time and efforts to the business of the Company, as required by your Employment Agreement (as defined below), but we have long suspected that you have been pursuing business interests unrelated to and competitive with the business of the Company in violation of your Employment Agreement and your fiduciary duties to us. We have recently uncovered evidence that this is, indeed, the case.

{P0301321.1}

000182

Mr. Anthony Sperandeo
January 29, 2010
Page 2

Your activities, and failures to act, over the last four years have been enormously disruptive and detrimental to the Company's business. In sum, you have failed to act as a contributing, responsible and equal partner in the business of the Company.

As a result of the foregoing, as two of the three Directors of the Company, we have determined that we can no longer work with you and that your actions are irreconcilably disruptive to the business of the Company. Therefore, we are hereby terminating your employment with the Company and your Employment Agreement, dated May 20, 2005 (the "Employment Agreement"), pursuant to Section 3 of the Employment Agreement, effective immediately.

In addition, as two of the three Shareholders of the Company under the Shareholders Agreement, dated May 20, 2005 (the "Shareholders Agreement"), we have determined that, given your repeated failures as outlined above, there is an irreconcilable dispute with you and that the three of us can no longer work together. In addition, your actions and failures to act, as outlined in summary form above, constitute just cause to terminate your employment under the Employment Agreement, as set forth above. Therefore, given the termination of your employment under these circumstances, pursuant to Section 2.02 of the Shareholders Agreement, the Company will purchase your Shares (as defined in the Shareholders Agreement) for the Agreed Buy-Out Price (as defined in the Shareholders Agreement). We are currently in the process of determining the amount of the Agreed Buy-Out Price and will communicate it to you once we have made that determination, which we expect to be within the next two weeks. In any event, the Agreed Buy-Out Price will be offset, at a minimum, by any amounts previously paid to you in respect of your capital contributions or in respect of expenses improperly charged to the Company.

In accordance with Section 3 of the Employment Agreement, we are requesting that you promptly surrender all Company proprietary information and property, including, without limitation, all cell phones, laptop computers and other Company materials. We will provide you with supervised access to your office at a mutually agreeable time in order to collect any personal belongings.

The remedies we are exercising under the Employment Agreement and the Shareholders Agreement as set forth in this letter are without prejudice to any other rights or remedies we or the Company may have, at law or in equity.

This action is not taken lightly. Please let us know if you have any questions.

Sincerely,

*[signature]*
George Lencsak
President, Director and Shareholder

*[signature]*
Kristene Burleigh
Director and Shareholder

{P0301321.1}

000183

# Exhibit D

**RESTRICTED DOCUMENT**